The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Good morning. Judge Barron and I would like to welcome Judge McAuliffe from the District of New Hampshire back to the Court of Appeals. Thank you, Judge McAuliffe for helping us out. All right, Dan. Today's cases will be called as previously announced and times will be as allotted to counsel. The first case today is United States v. Wally Irizarry-Sisco, appeal number 19-1763. Attorney Borbeau, please introduce yourself for the record and proceed with your argument. Good morning again, Your Honors. Michael Borbeau on behalf of Mr. Irizarry-Sisco. I think there's one point that we all can agree on and that is that in allegations of child sexual abuse, they raise special evidentiary issues and we know that from this court's opinion and else. In this case, at least one example of that was that minor Y testified by Vidya without objection. Another example is often the need for experts. We had Dr. Strange who explained the substantial body of scientific research that memories can be learned as well as the suggestibility of children. Dr. Strange testified that every time we retrieve memory, we're introducing the possibility of error. Then because of we all being suggestible, we can't necessarily tell where the different details come from. And that's called source monitoring error. She also explained that the large body of research indicates that 30% of adults come to develop entirely false memories. And that's as a result when given memory construction tools and children are even more susceptible to those tools. I suggest that the record demonstrates here that that's what occurred. It occurred first by the maternal aunt, Micardo Alizio. She provided the first step of suggesting that minor Y may have been harmed by Mr. Irizarry-Sisco. I'm going to short circuit your argument, but I thought you were making a specific argument in your brief about the excited utterance rule. I think it comes together when it comes to the issue of whether it's harmless error or not. Before we get to the harmless error, there's got to be error. So that's got to turn on whether or not it fits within the excited utterance exception. So what's your argument as to why it doesn't fit within the excited utterance exception? Well, the first being that the child herself did not bring up the fact that Mr. Sisco did anything. What happened was only after the child said nothing was wrong, the neighbor started to inquire and suggest that something may have been wrong and then got into the details of what may have been wrong. The neighbor brought up the sexual activity issue. I'll just follow up on that. My read of the cases is that the fact that there is a prompt following evidence of a person being distressed because of some startling event, here I guess the appearance of the accused, that doesn't itself preclude a district court from having the discretion to conclude that the exception applies. So if the neighbor were to say, what happened? Why are you upset? That alone wouldn't mean that if the child then gave an answer to why she was upset, that that would preclude the exception from applying. That's at least my read of the precedent. I don't understand you to be disagreeing with that. So it seems that a lot turns then on the precise nature of the exchange between the neighbor and the child. What is the length of time that passed between the arrival of the accused and the child becoming upset and the child ultimately giving her answer? Is it like a minute? I don't believe that is explicitly answered in the record. What happened according to the testimony was after the child said nothing was wrong, the neighbor said she asked again and again. And I believe those are her words as to what was going on and kept pressuring her to provide an answer. And that really is where the issue comes into play. As to whether this is coming, again we're trying to look to see whether this is reliable. And I guess what I'm saying is given the abuse of discretion standard and the way you're describing it, why wouldn't it make sense for an appellate court to say well if it comes down to that kind of judgment, how much pressuring was there, how much time passed, how upset was the child, why not leave that type of assessment to the district court's discretion rather than us on a cold record trying to make that assessment? I understand the court's question. However, in this case, I think number one, the point that this was even an excited utterance wasn't even made until after the completion of the testimony. That at first what was raised was continued on and objected to and the testimony continued. Here the judge was looking for a way to allow this to come in also by suggesting that it was a state of mind exception, even though the state of mind was coming from the neighbor, not from the child. And the government even conceded that. So here, yes, the trial court in given circumstances, but I do suggest this court has to look at the severity of bringing in this type of information, particularly where the jury in this case was looking for some facts and details to corroborate the child. And quite frankly, they couldn't find those details for count two and they acquitted him on count two. But here, the details provided by the aunt and the information coming from the aunt Just before you get there, I'm going to one of Judge Barron's points. Is there anything that you know of that prevented defense counsel from putting the time lapse in issue? No, your honor. I don't think there's anything to be quite frank. I think it was a little bit taken by surprise as to this information coming in when you look at the record and the exchange that took place after her testimony. So from that standpoint, the court's absolutely correct. But I do think the severity of this information, which didn't come from the child. The child never mentioned it during her testimony. The child, this entirely came from the neighbor after, or more or less after the child indicated that nothing was wrong and then continued to question the child and provide suggestive language to her. No different than, for example, in the Ellis case. There was a social worker that went through all the details and everything as what happens with these type of cases that use the anatomical dolls and so forth. But the trial court didn't let that in, didn't let that testimony in because it was after the fact and it was coming from the social worker. But that was not an excited utterance case, was it? No, it was not an excited utterance case. It was the other exception. So you don't dispute that if the neighbor had merely said what happened and then the neighbor reported the child gave this answer, that that would be admissible as an excited utterance to you? I would agree with that. Because that's explaining the event. Everything turns here on the fact that the neighbor, according to the transcript, didn't just say what happened. She said, first, did he hurt you? And then the child said no, or I guess no. And then the neighbor said, I insisted that she tell me whether he had hurt her. And then the child answered. And it's those two questions, I guess, by the neighbor that are in the record that you say distinguishes this from being within the excited utterance exception. Is that right? Correct. As well as the statements that were in questions were not asking about the event. And again, trying to fall within the rule. They're asking direct accusations about other activities at other times. Not what about, you know, they weren't open-ended questions, they were accusatory questions. I hope I've answered the court's question to the best of my ability. The same situation occurred in reference to the, which I believe was the first instance, was the maternal aunt's issue of when minor Y came home and mentioned something about her ring-around-turning she, the neighbor immediately accused Mr. Irizarry Sisco, I mean not the neighbor, the maternal aunt, immediately accused Mr. Irizarry Sisco of doing harm to her. And then issued an opinion of, the opinion indicating that he had, Mr. Irizarry Sisco, had harmed minor Y. Again, introducing to the jury the very first instance of accusations against Mr. Irizarry Sisco. And introducing to minor Y those first accusations. At no time did the minor ever bring up the accusations herself. At first. It all came from other individuals. Can I ask you one last question? Sure. If we thought that the other report by the neighbor about what the child had said was admissible, okay, as a present sense impression or something like that, if we thought that was not an error, given the other evidence in the record regarding the corroborating, I know you could challenge it, but at least potentially corroborating evidence of the child and the accused being together at the hotel, what would be the case for saying that if the excited utterance ruling was error, it was prejudicial rather than harmless? The reason I think it's prejudicial here is because the jury was looking for corroboration as demonstrated by the not guilty on counting. The only corroborating details of the child being at the hotel Yes, there are those hotel records of at some point the child and Mr. Irizarry or Mr. Irizarry's car went to that hotel because that's demonstrated by the record. But is that alone enough to show all the elements that are required for the Mann Act violation? As the government points out, you also have to deal with intent and so forth and all these other things as to what occurred. The jury was obviously looking for corroboration and what these statements, both by the maternal aunt and the neighbor were directly providing that corroboration that was otherwise lacking as to the elements of the offense. Mr. Bourbeau, let me ask the court if there are additional follow-up questions. All right, thank you. If you would mute your audio and video, we'll hear from Mr. Perez. Thank you very much, Your Honors. Good morning, Your Honors. May it please the court, Antonio Perez on behalf of the United States. The jury verdict in this case should be affirmed. We contend that there was no error in either of the two pieces of disputed testimony, but we also contend that this court doesn't even have to reach that because the two contested evidentiary issues presented by the appeal, it is clear that neither of them affected the outcome of the trial and so any potential error was harmless. Let's start with the fact that both pieces of disputed testimony are of very minor importance in comparison with the evidence that is not an issue in this case. In particular, the minor victim testified in this case and gave her first-hand account about how Mr. Eritizade took her to two motels to sexually assault her. Specifically as to count one, the count that was convicted, which was the count associated with the El Edén motel, the minor testified and gave her first-hand account about how Mr. Eritizade took her and she thought she was going to Walmart, which she actually enjoyed doing with Mr. Eritizade, but she was surprised when they passed Walmart and instead they drive into a motel and as they're driving in, Mr. Eritizade tells her to get down so that they won't see her because she's a minor. As soon as they come in to the motel, she testifies how the motel room had a stripper pole and a TV in which Mr. Eritizade immediately put on pornography and got naked. The minor was so scared that she testified that she went directly into the bathroom to not see that and when she came out Mr. Eritizade sort of swiped and touched in her words her woo-woo, which was her language for her vagina and questioned as to why she would make him spend that money if she wasn't going to do anything. In addition, as to count one, as to the El Edén motel, the government provided additional evidence and a manager of the El Edén motel specifically testified and identified pictures that the minor had identified of the El Edén motel as being pictures of the El Edén motel, of the inside and the common areas of the El Edén motel. He also authenticated a record showing Mr. Eritizade's car with his license plate in the El Edén motel during the relevant time frame. And in addition to that Ms. Mercado, the minor's aunt testified that on two separate occasions during the relevant time frame she saw the minor either leave or come back with Mr. Eritizade from about the hours of nine to four, so she was out with him the whole day during the relevant time frame. So all of this evidence is undisputed and it's clear that it was more than sufficient and the main driver to support the jury's verdict of guilty as to count one making the disputed testimony insignificant. This case, and I would analogize, is very similar to... On the count where the conviction was for, is the statement that the child made with respect to the excited utterance issue, is that statement about the visit that resulted in the conviction, or was it a statement about the visit that resulted in the acquittal? It was as to count two, the one that resulted in the acquittal, and that's a very good point, Your Honor, and weighs more heavily in favor of finding harmlessness. How clear is that in the record? It's very clear, and so let me explain that. So as to count, as to the Yeleden Motel, I just went through what the minor testified and sort of the most severe conduct that happened at that point was that Mr. Eritizade touched her woo-woo, her vagina. As to the second motel, she testified that when they got into the motel, Mr. Eritizade laid on top of her, and that he passed his penis through her vagina and through her anus, and that he ejaculated on top of her. So as we look at the two pieces of disputed testimony, first the excited utterance statements to Titi Wanda, she said that in her own words, in the words that were used by Titi Wanda and the minor, that he had put what was between his legs in her woo-woo, which again is consistent with what the minor said that he passed his penis through her vagina in the second motel. And then after that, the minor said, and some white stuff came out. But I'm just, the statement as reported by the child that's the excited, that's her putative excited utterance statement, the statement itself doesn't itself identify itself as being about the second visit rather than the first. Is that right? She doesn't mention any of the motel names. That's what I'm saying, exactly. No, I understand that. I'm just saying the child herself didn't report, the report by the neighbor is not that the child said that occurred at the second visit rather than the first. I just wanted to clarify that point. I see what you're saying. Okay. But again, it furthers the harmlessness argument that if the jury had placed any evidentiary value in these two disputed pieces of testimony, they would have been more likely to convict on count two, not count one. And that's the count that they acquitted on. In addition to that, the two disputed pieces of testimony were barely relied on after, were barely relied on throughout the trial. For example, the contested opinion testimony, which is where Ms. Mercado testified that the minor's nonverbal reactions to her statement, be careful that that old man that he hasn't done anything to you, that was never mentioned after it occurred. The government didn't mention it in closing and there was no other mention of that opinion after that occurred. As to the excited utterance statements, it was actually Mr. Gisardi who emphasized them in his own closing argument and made them a part of his defense, sort of how counsel here in our argument is arguing that it created, that Titi Wanda sort of put ideas into the minor's head and created a false memory. So he was able, rather than being prejudiced by it, he was able to use it as an effective defense and it may, in part, may have contributed to the acquittal on count two. Could you just address whether there was error? Could you address whether there was error? Sure. Is there any issue in particular you would like me to address or both of them? With respect to the excited utterance. Sure. Of course, Your Honor. I would argue that there was no error, Your Honor. The excited utterance rule is an exception to the hearsay statement. Let me just go directly. Could you just address the fact that in this case, it's not just a question of the neighbor saying what happened or just an open-ended prompt, but as your proponent suggested, the terms of the prompt were themselves accusatory and then they came after the child had said nothing happened originally. And then, at least as I understand the record, the person making the accusatory prompt herself described herself as insisting the child give an answer. And those are the features of it that strike me as potentially concerning about treating this as an excited utterance. So if you could just address that. Of course, Your Honor. I would argue that it's still qualified as an excited utterance because the crux of the excited utterance rule is whether the statements were made while the declarant was under the stress of excitement that it caused. There's no per se rule that it has to be an unprompted statement. In fact, I direct your attention to a Seventh Circuit case, United States v. Joy, that specifically says there is no absolute spontaneity requirement to the excited utterance exception to the rule. The circumstances under which the statement occurred indicate that it was clearly in a stressful and excited state that the minor was in. Once she heard the car noise, Didiwanda testified that she became very nervous, that she was nervous the whole time, that her eyes got really big, that she was acting scared, that she was moving her fingers and her record describes a very tense interaction that creates a very sudden response in the minor and puts her in a stressed and excited state. The sudden response was not verbal. The concern is that the verbal response arguably wasn't sudden. It was the result of an accusatory prompting. That's at least my concern. Maybe there's a catch-all reliability issue and then that has a different thing. This comes in regardless of what other indicia of reliability the statement has categorically if we conclude that it was an excited utterance. At some point, I would think that even if a person is in a distressed state, a degree of accusatory prompting can preclude the statement from coming in as an excited utterance. The question is how much accusatory prompting is permissible within the rule. It could be none. It could be some. We leave it to the district court to address. This record is not a case of the reaction was sudden. The reaction was in response to insistent questioning that has an accusatory flavor. Why is that not a problem? I think the crux of the inquiry is whether the statements were made under the stress of an exciting event rather than the product of reflection or deliberation. The prompting of the questions is relevant to that inquiry, but it's not dispositive. I would point you again to United States v. Joy where the court admitted a transcript of a whole 911 call where, in part, the statements of the declarant were prompted by questions of the 911 dispatcher, but the court said the fact that the declarant was answering questions rather than giving a spontaneous narrative does not indicate that he was not excited when he provided the answer. It specifically says, on the contrary, it is possible for someone to be too excited to volunteer pertinent information, and thus the inherent guarantee of truthfulness supporting the admission of excited utterances applies equally to declarations made in response to an inquiry. The most important thing is determining whether she's under the stress or excitement, and there is the inherent guarantee of truthfulness that's provided by making statements as a product of that stress or excitement. I would indicate that the record showing her demeanor and her clear excited state and nervousness upon hearing the car noise, the car that she recognized as the car that Mr. Itisadi used to take her to motels and sexually assault her, indicate that here the statement was made under the stress of an exciting event, and therefore should fall within that exception. In addition, I'd like to point out that, to the extent that there is a close call, that is why this court gives the district court ample discretion in these types of close calls, because the district court is making these sort of split-second decisions, and so to the extent that this court, with sort of a 30,000-foot view and looking at everything, may have taken a different approach, it's important to consider that this court has said that the district court has a superior vantage point to make these sort of split-second decisions, and that's why the court affords it ample discretion in deciding whether or not to admit disputed testimony under the excited utterance rule. Does the court have any other questions? I don't. Alright, Mr. Perez, thank you so much. Thank you, and we just ask that you affirm the court's judgment and sentence. Thank you. That concludes argument in this case. Attorney Borbeau and Attorney Perez, you should disconnect from the hearing at this time.